Our first case is 20-2014 United States v. Lowell. And for the appellant, Mr. Rcc, you may proceed. Thank you, your honors. And counsel, John Rcc from the Federal Defender's Office in Denver, appearing for the appellant Daniel Lowell. Your honors, I want to start today with our sentencing claim. And that's because ultimately its application of the felony, the federal felony murder cross-reference that drives the outcome of this appeal. And on that question, I want to focus on our preserved challenge, which is the last issue in the briefing. And that is that the cross-reference was incorrectly applied because this carjacking was not federal felony murder. Now, the government and Mr. Lowell, we agree on the relevant inquiry, right? We agree that the federal felony murder rule reaches only immediate flight, where there's been no break in the chain of events, such as the fleeing person has reached a place of temporary safety. Now, the district court's conclusion that that standard hadn't been met here is just flatly contradicted by the record. During the nearly two and a half hours that between the end of the first chase and the resumption of a second chase on the streets of Las Cruces, some 45 miles away, Mr. Lowell and Ms. Chaffley engaged in a multitude of activities that were unrelated to direct flight from the carjacking itself, and were in fact indicative of having attained a period of at least temporary safety. There are a lot of facts, but I think there's three that are really critical here. Counselor, why hasn't the defendant waived this argument? This argument is preserved. This is the one preserved challenge in this case, actually. This was raised as a sentencing challenge. It intersects, I agree, sort of conceptually it intersects with our first challenge, which is to the factual basis of the plea regarding which count of conviction is appropriate, simple carjacking or aggravated carjacking resulting in death. But the felony murder guideline issue applies regardless of the underlying count of conviction. Now, I can, I'll tell you why that claim was not waived with respect to the, to our factual basis claim, and that's because it's just a different claim that we've raised in our first issue. But with respect to this particular sentencing claim, that was preserved below, and in fact is the only issue that was preserved below. Now, do we look at it from, you know, the, the, you know, you have, you have an active pursuit here. I mean, I, I think it's fair to say the government never, you know, gave up its, its, its search. You know, so you have really two, two scenes to this movie. One is, you know, the government action and the other is the defendant's action. And yeah, you know, maybe if you just watch the defendant's movie, you know, they're taking drugs, they're going to Walmart, they're renting a hotel room. And you say, well, yeah, it kind of looks like the carjacking's over. But if you're watching the government's movie, you've got 911 calls, you have helicopters, you have intersections being closed, and, you know, they're, they've not given up. And so, which, which of the two movies should we look at under the, under the sentencing guidelines, or, you know, trying to figure out whether this was in perpetration of a carjacking, the government's movie or the defendant's movie, or is it some amalgam of flashbacks back and forth? Yeah, it's, it's a metaphor, but that's, we were thinking movies with this case. We need a good editor for, for the sequencing. No, it's, it's, you're looking at both screens and putting them together. It's, I think if you look at Patton and the Lefebvre treatise that it cites with, with approval as the basis for this temporary safety concept, what we're looking at is sort of an objective totality of the circumstances that looks at time, three factors, really time, place, and the causal connection. Now, certainly the sort of subjective assessments that motivated the district court's reasoning below are relevant, right? They're, they're often indicia of, of objective facts, they're relevant inquiries into it, but they're not necessarily dispositive. It's a totality circumstance. And I think when you, when you put those things together, you have the time significant separation, two and a half hours, far more than Martinez-Bermudez, the only case that any party has identified as being remotely on point, that the space, right, some 45 miles away from, from where the carjacking occurred. And again, this, this period of separation where we have evidence of what happened, right? This unchallenged. Is it your position that anytime law enforcement loses sight of the suspect, then all deals are off? No, absolutely not. I don't, I think there's a categorical rule, really any categorical rules that we can really affirm in this context. And that's somewhat unsatisfying, I know, but it's, it's, it's the necessity of this type of fact-based totality circumstance. So you can. I guess we could adopt a black and white rule that the carjacking is continuing so long as they still have the car. Yeah, I think that would go even further than Martinez-Bermudez contemplates that dispossession of the property isn't dispositive. Martinez-Bermudez itself contemplates that there's a, an end to, to the carjacking that, that occurs and that, that even continued possession of the property wouldn't necessarily answer the question of temporary safety. And that makes sense. You think of a robbery where somebody takes, you know, takes jewelry from somebody or something, right? And then, you know, after having attained temporary safety, goes about town wearing it, right? That, that, that it would be odd to say that the robbery was somehow continuing in that context. Let me ask you this. In looking at the trial court's determination that this was in perpetration of the carjacking, how much deference do we give? Are we looking at, is this a pure question of law, question of fact, mixed question of law and fact, and do we defer to the findings of the trial? And so you give, give full deference to those and you don't have to, we all agree what happened here. The question is whether in totality, right, those add up to application of this cross-reference and add up to federal felony murder. And that is a de novo question because it's about whether or not the undisputed facts support application of this sentencing enhancement. So you need to look at the facts of this case and decide, is this federal felony murder, essentially. And again, you know, as I'm saying this, that these causal factors of time, place, and causal connection, I think really pointed only one direction here. This is, would be far, far beyond the line that Martinez Bermudez drew, which again is the only on point or relatively on point authority in time, in space, and in just the causality in the sense that there were no facts in that case about what occurred between the carjacking and the death that occurred there. Whereas here, right, we have ample evidence that the defendants exercised unchallenged authority, uh, over these, this vehicle during the time. And I think the Walmart, you know, example that Judge Tinkovich pointed out earlier is, is really important because, you know, they, they didn't just go to Walmart. They, they went to Walmart, they stopped, they parked the car, they went inside, they shoplifted with impunity and then left and drove away. I mean, that's part of the shoplifting was to advance their escape. And that's, I'm sorry. You know, one of the reasons they were there was to try to, try to, you know, set up another escape vehicle. Right. Yeah. And I think that that actually supports our position because it's indicative of, of, of having attained temporary safety and wanting to take steps to make that safety permanent. So I think that that actually advances the ball on our side, uh, far more than it does on the government's. Um, and to go back to Judge Kelly's question with respect to, you know, having eyes on them at all time, I think it's important that, that that is not our position. Um, that's a red herring, right? We're not, there's certainly plenty of scenarios you could envision where that wouldn't be true, right? Um, continuing chase after a robbery where a defendant is hiding in the woods, right? As in pattern, um, and isn't free to go anywhere. He's literally just hiding while the police close in. That's a very different scenario than traveling throughout Las Cruces, doing drugs, scoping out private parking lots to try to break into cars, going to a store. They wouldn't go back to the hotel though, because he thought the cops would be waiting for him there. And again, I think in the same way that he thought he was being chased the entire time. Yeah. And I'm not sure how much we can excise his induced paranoia that was, was probably attendant in, in some of those beliefs, but crediting the district court's finding on that, uh, that he believed he was chased. That's a relevant factor, but objectively he also exercised unchallenged control over the, over the, over the vehicle during this time. And I think he carjacked, he had complete control over the vehicle. Yeah. And they, they, why is the problem? I don't think it's a problem. I think it's, uh, it's not so much the control as the volition, I think. Um, that is that they had the, the volition to, to go where they chose, right? They drove through Las Cruces, they went to the stores, they went to the parking lot, no one stopped them, right? If anything, the traffic, um, with respect to the hotel, I think similar to the, the spark plugs shoplifting, that helps us too, in the sense that they recognized that they were temporarily safe, and they did not want to take steps that would endanger that temporary safety by going somewhere the police may be looking. So I think that that actually is a fact that helps us as well and adds to the totality of objective manifestations of temporary. Because again, this isn't, we're not suggesting that we're permanently safe. This is a concept of temporary safety. And that's all, all that needs to be shown here. Um, I, I do want to, uh, if the court has no further questions on this, this, this particular issue, um, obviously the, the, the, the guideline range is radically, uh, different and, and a remand is necessary, uh, if you agree on with us on this. And this is, I think, the narrowest, it's a necessary issue to reach in this case. And I think it's the narrowest ground, um, for affirmance in the sense that we can presume, even assuming carjacking is robbery under the felony murder statute, this carjacking, uh, does not account, uh, is not federal felony is true. Um, well, did they argue felony murder reference was improper in the, in their arguments trial or the sentencing? I'm sorry. I didn't hear that fully your honor. You know, you're saying that the felony murder cross-reference is inappropriate. And I want, I want to know if that was argued to the district court. Yes. So the, the argument we just made was argued to the district court that the federal felony murder cross-reference was inappropriate because assuming that robbery, that carjacking counts as robbery under fed under a section 1111, then this carjacking does not count. That argument was made. We have a separate argument that we've raised in the briefing that, uh, that carjacking generally should categorically not count as robbery. Um, it's not really, it's to the district court. That's on plain error. And, you know, I think that, that you can read, right. That is another ground on which to resolve this claim. Um, I just think the preserved challenge is a far narrower and easier claim to, to, to do so on, on that challenge. You know, our position is, is fairly laid out in the briefs. I don't have a ton to add. Uh, it is simply that, right. That the plain elsewhere, Congress specifically has identified carjacking as a discreet and crime than robbery. And when Congress has done that, at least the sections you say, it's typically because they're citing specific statutory crimes by statute and not including every iteration of robbery. Right. And so here, you know, you have Congress making the decision to put carjacking in the section of the code that, that is robbery. And I mean, isn't it a robbery carjacking? It's a subspecies of robbery, I think. Well, and if it's a subspecies of robbery, um, I think it, I mean, I think it falls into the felony murder statute. I have two responses to that. I mean, the first that 3559 isn't so clear cut as I think, as I think that suggests, I think there's, there are some crimes that are statutorily defined and there are others that are more, uh, sort of articulated in the generic sense. And so I don't think that fully answers it. And I think it's meaningful, um, that Congress, uh, that A, when section 1111, the federal felony murder statute was enacted, right, carjacking did not exist as a federal crime. Uh, and that Congress has never taken steps to, to amend it, even though 3559 was added at a time in the 94 crime bill, right? When carjacking was amended to include the conditional intent element, uh, and section 111 was also amended in that bill. So I think that that's meaningful, uh, and does, does advance the plainness on it. But again, I think that the preserved challenge is really the narrower and the more discreet, uh, because even if we thought you had a decent argument, I'm not sure I could say it was plain. Yeah. I mean, respond to that. And just, I think the statutory, we apply the words of the statute, right? And that, that having this evidence that, that Congress does treat them differently in a way that's meaningful elsewhere, coupled with the lack of amendment, I think does send a pretty clear signal that it means something different. Um, I've got 45 seconds left. I'd like to reserve that time. May let's hear from the government. Thank you. Council. Um, it's on. Good morning. May it please the court council. My name is Marissa Ong and I'm an assistant United States attorney in Las Cruces, New Mexico. I'd like to begin with a question with answering the question that judge McHugh posed, namely how much deference should you give to the district court's conclusion that the defendants reached did not reach temporary safety. That finding is subject to clear air review. And the way that we know that is by looking at this court's decision in United States v. Patton, where this court reviewed a district court's conclusion that an officer was injured during immediate flight. There in Patton, this court discussed how application of the guidelines sometimes calls for mixed questions of law and fact, but it held that the district court's conclusion that the officer was injured as part of the and that it was subject to clear air review. That same rationale applies in this case, whether or not the defendants reached a point of temporary safety is a fact intensive inquiry. The district court held a two day evidentiary hearing where it heard from two different witnesses. And I would also note that if Mr. Lowell had been tried for felony murder under section 1111, whether or not he reached a point of temporary safety would have been a factual issue that would have gone to the jury to resolve. And for those reasons, it should be subject to clear air review. On this record... Do we look at the subjective understanding of the defendant or is it an objective test? Your Honor, I would agree with the appellant that the most appropriate way to look at this is under the totality of the circumstances. In Patton, where this court was considering whether or not immediate flight was still ongoing, there the sole focus was on the efforts of the officer. There was no information about Patton's subjective frame of mind. All we know is that he was wandering in the woods and when the officers found him, he was walking along the highway. So I certainly don't believe that it's necessary to have any facts that would show a defendant subjectively believes that he is still under the stress of being chased. But ultimately, it's a totality of the circumstances here. The district court had the benefit of being able to watch both movies, Your Honor. The district court was able to watch the movie from the government's perspective, where there were great law enforcement efforts that were being made to find Mr. Lowell. There were four different agencies that were chasing him. There were helicopters in the sky. As Judge Timkovich, as you noted, they were setting up boundaries all over. The district court also had the benefit of hearing from the co-defendant in this case, who testified that her and Lowell were under constant stress that they were being chased. When they went to Walmart, they weren't there to shop for groceries. They were there to steal spark plugs so that they could continue their flight. That is something that Lowell specifically admitted to during the factual basis for his guilty plea. He admitted that he went to Walmart to steal spark plugs to advance their flight. My question, going back to the standard of review, which is what I thought was critical in determining this issue. It's a mixed question of law and fact, isn't it? Your Honor, I think that this court's holding in patent would support the conclusion that it is subject to clear error. In patent, the factual findings of the district court, they're subject to clear error, right? That's correct. In patent, this court also stated that the district court's conclusion that the injury occurred during immediate flight from the robbery is subject to clear error review. That's the same situation that we have here. We have the district court's conclusion that they did not reach a point of temporary safety. I would submit that under the holding of patent, that the correct standard of review is clear error, and it is. It's a fact-intensive inquiry. At some point, though, we're going to have to evaluate whether the court correctly applied those facts in the totality of the circumstances effort to the question of immediate flight. I think you'd agree at some point, it's really a legal question that whether temporary safety has been reached. If they had escaped and made it all the way to El Paso and were there for a week, I don't think you'd agree that that's still immediate flight. I don't think that would be a fact question. At some point, we have to draw the line, don't we? Well, Judge Timcovich, I still would maintain that even if they went to El Paso and had reached a point of temporary safety, that's still a factual question. The legal question is how you look at what constitutes in perpetration of and whether or not temporary safety is something that you consider and what other considerations can be made in making that determination. You would say that under the Chief Judge Timcovich's hypothetical, that if we disagreed with the district court, we'd have to say that it clearly erred in saying that they did not reach a point of temporary safety after they fled to El Paso and stayed there for a couple of weeks. That's correct. And I think under Judge Timcovich's hypothetical, you would have the facts necessary to make a clear error. Well, what about here? We've got these people, they take a drug break. I assume they must have felt pretty comfortable if they decided to get high in the middle of this. Well, to be fair, they were getting high throughout. They were getting high on their way to the checkpoint and they actually got high after they carjacked the vehicle while they were still on I-10, while Berta Patrol still had eyes on them and they were actively fleeing. What happened was the co-defendant, Ms. Schaffley, she was freaking out because of what had just happened. So she decided to take some drugs in order to try to come down from that. But their use of drugs occurred while they were still being actively, I mean, they were being actively pursued the whole time, but their use of drugs occurred on the highway when Border Patrol still had sirens on and eyes on them. So, you know, this is not a situation where they decided to get high. They were getting high because of the stress, because of the stress that they were feeling based on law enforcement's active pursuit of them. So with regard to whether or not they reached a point of temporary safety, I believe there's ample facts in the record to support it. It is our position that's subject to clear error review, but even if this court reviewed it under a de novo standard, that standard could still be satisfied. The district court made very specific findings on that issue. Unless the court has any other questions, I'd like to now move to the other sentencing issue raised by the appellant, and that being that robbery, that carjacking does not count under the felony murder rule because it's not specifically enumerated. As this court alluded to, robbery, excuse me, carjacking is a species of robbery, and I think if you look at the United States v. Nichols case, it clearly resolves this issue. In United States v. Nichols, the defendant was convicted of using a weapon of mass destruction. There, the district court applied to a 1.1 using the felony murder rationale. In that case, this court held that that was the correct guideline to use because using a weapon of mass destruction is functionally equivalent to arson. At a minimum, carjacking is functionally equivalent to robbery, and I would also note that by the rationale of the defendant's position, and this is something that was specifically discussed in Nichols, someone who commits a robbery is going to be punished more harshly and be subject to the provisions of the felony murder rule than someone who commits what is really just an aggravated robbery under carjacking, and that was something that was discussed in Nichols, that it simply doesn't make sense that someone who uses a bomb would be punished less leniently than someone who uses fire to commit an offense. Unless the court has any questions on that, I'd like to move to the defendant's first argument on appeal. Our position is that that claim has been waived. Our position is laid out in the brief. In addition to what we stated in the brief, I would also note that there was a status conference on June 6th where the district court, and you can find this in the Record on Appeal, the fourth volume, at page 86. The district court specifically asked Lowell if he was going to file a response to our motion in limine that laid out what we believed was the correct causation standard, and at that status conference, Lowell said, oh, you know, I'm thinking about it. I think that, you know, there might be, we might have a position on that. Ultimately, Lowell did not file a response. The details of that are laid out in our brief, and I would also point out that the jury instructions that Lowell proposed on this issue, the fourth element that he actually proposed says at or during the time the defendant took the forerunner, he intended to cause death or serious bodily injury. That's completely contrary to what he's arguing now. Now he's arguing that a defendant has to have the specific intent to cause death or serious bodily injury at the same time that the resultant harm occurs. Not only is that completely contradictory to the position that he had below, but even if you standard, that contradicts the Supreme Court's holding in United States v. Holloway where the Supreme Court looked at the specific intent element under the carjacking statute and held that it is satisfied the moment that a defendant takes the vehicle, and in Holloway, the Supreme Court specifically stated it's not concerned with what the defendant does after. The relevant inquiry is what happens the moment that the vehicle is taken. Going back to the waiver issue, in his reply brief, Lowell argues that he preserved that issue because now he's saying, oh, I'm not saying it's not but-for causation. I agree it's but-for causation, but there's this additional thing that you have to show, and that's that the intent has to happen simultaneously with the resultant harm. I would point out that the specific intent element was something that was always on Lowell's mind. His entire defense in this case was going to be that he could not form the requisite specific intent because he was so high on drugs. In fact, he filed a Rule 12.2B notice in this case. That notice is not in the record, but what is in the record is discussion of that notice at a February 6th status conference. These issues were something that Lowell had the opportunity to think about. He had the opportunity to raise, and he ultimately abandoned when, during his plea hearing, the court made sure to ask the parties because the court knew that this could be a potential issue between the parties, and the court specifically stated, you know, we need to make sure that we're getting the jury instructions correct. Have both parties had an opportunity to review these instructions? Lowell stated that he had. He additionally stated that he had no objections to the proposed instructions twice. And just to finish, the only question there, even if this court doesn't find waiver, is whether it was plain error for this court to find that but-for causation was the correct standard. Lowell admitted during his plea colloquy that but-for the carjacking offense he committed, JRS would not have died. So that's an undisputed factual issue that Lowell has already admitted to. Unless the court has any additional questions, I'm happy to return my remaining five seconds. Thank you, counsel. Mr. Orsici, you had a little bit of a rebuttal. Sure. I just have three quick points to make. The first is that this is a de novo review. This is akin to a factual basis challenge, essentially, is our challenge. And Padden is a Chapter 3 enhancement, and many, if not most, Chapter 3 enhancements are reviewed for clear error because they are ultimately factual determinations. This is different than what was at issue in Padden. Second, Volume 4 at page 134 is where Ms. Shaffley testified with respect to doing drugs even after the police had stopped their active chase. So there was a period of time in Las Cruces, apparently, where they were doing drugs, perhaps while driving around town, perhaps stopped, we don't really know. And third, the waiver question, this is a completely different claim. The challenge below was doctrinal. This is about the plain language of the statute. My time is up. I would simply ask you to remand if you have no further questions. Thank you, counsel. We appreciate your arguments, very clearly stated. Your excuse and the case shall be submitted.